# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.   CRIMINAL ACTION NO. 3:18-00097

MARCUS DEPREE SMITH

### MEMORANDUM OPINION AND ORDER

On December 28, 2018, Defendant Marcus Depress Smith filed a Motion to Suppress Evidence (ECF No. 27) and a Motion Reserving Right to File Further Motions. ECF No. 28. For the reasons stated below, the Court **DENIES** Defendant's Motion to Suppress Evidence and **DENIES AS MOOT, BUT WITHOUT PREJUDICE,** his Motion Reserving Right to File Further Motions.

On January 14, 2019, the Court held a hearing on Defendant's motions. At the hearing, only one witness, the arresting officer, Timothy Duran, testified. Officer Duran worked as a shift patrol officer with the Hurricane, West Virginia Police Department, and was assigned to patrol an area in the vicinity of Interstate 64 and state route 19, a well-traveled intersection with many commercial establishments.

At approximately 8:52 p.m. on August 29, 2017, Officer Duran observed a vehicle, quickly identified as a green Acura, proceeding without its headlights on. As it passed in front of him, Officer Duran pulled behind it and turned on his blue emergency lights and siren, but it did not pull over even though there were several areas where the driver could have done so. He could see the driver and a passenger in the Acura. As the driver did not seem to be complying, Officer

Duran turned on his spotlight and aimed it at the vehicle which then abruptly stopped on the side of the highway.

Officer Duran pulled directly behind the vehicle and exited his patrol car. As he approached the Acura, he observed the passenger leaning forward over the seat and moving around. Before Officer Duran reached the vehicle, it sped away. Officer Duran then returned to the patrol car, and called his dispatch to report the vehicle's license number and its failure to stop. He was informed that the license plate did not match the Acura.

Officer Duran resumed following the vehicle which soon pulled over again. This time, Officer Duran walked up to the driver's window as another officer, who had just arrived, went to the passenger side. Officer Duran testified that, as he addressed the driver, he could smell marijuana coming from the vehicle. As is his usual practice, he then asked the occupants if any weapons were in the vehicle, to which the driver said "no." However, the passenger responded "maybe." The passenger then stated that there was a gun under his seat. At that point, Officer Duran instructed the driver to place her hands on the steering wheel and the passenger to place his hands on the dashboard. The other officer removed the firearm from the car. Officer Duran obtained the passenger's identification card, and upon checking it, discovered that the passenger was a convicted felon. Officer Duran proceeded with issuing citations to the driver, including ones for improper registration and lack of insurance, which resulted in her being unable to drive the Acura away.

Under cross-examination and redirect, Officer Duran explained the sequence of material events in more detail and with specific times based on the computer-generated printout identified as the "CAD Report,"[1] admitted into evidence at the hearing. *Ex. 2*, ECF No. 34-2. Relying on

---
[1] CAD stands for computer-assisted dispatch.

that report, Officer Duran testified he had quickly learned that the vehicle's license plate was for a different vehicle owned by someone other than either of the occupants. At precisely 9:04 p.m., he was informed by dispatch that the driver's license was suspended. By 9:06 p.m., dispatch reported that the passenger, Defendant Marcus Smith, was in fact the registered owner of the Acura. By 9:13 p.m. the officers had arrested the defendant and issued citations to the driver.

The Court concludes that Officer Duran was actively investigating all these matters – the driver's status, the registration and license plate for the Acura, and Defendant's status relative to the firearm – at the same time, within twenty minutes from finally stopping the Acura to issuing citations and arresting Defendant. Though the absolute sequence of each step cannot be ascertained, the CAD Report and Officer Duran's recollection adequately establish that the length of the stop, from initiating the stop to completing the citations and arrest, was reasonable. The duration of the investigative stop was not unduly extended for any improper purpose or in any improper way.

The Government argues that, based on the totality of the circumstances, Officer Duran had reasonable suspicion to stop the Acura and conduct the investigation of the passenger as the event ensued. Those circumstances include the vehicle's failure to promptly stop; the passenger's furtive movement and ambiguous response to the officer's question about the presence of a firearm; the information about the driver's license and the vehicle's plates; and the location of the firearm hidden below the seat, by a passenger wearing a gun holster. All these circumstances reasonably led the officer to inquire further about the passenger, and he did so coextensively with his investigation of the driver and the vehicle, which were necessitated for the traffic citations. Each step of his investigation into the driver, the vehicle, and the passenger took place simultaneously

and within the reasonable time span necessary to complete his actions related directly to the reason of the initial stop and subsequent investigation of the driver and the vehicle.

On the other hand, Defendant relies on *United States v. Clark*, 902 F.3d 404 (3d Cir. 2018), for proposition that Officer Duran's "mission" here – the reasons for the initial stop or which justified extending the stop – did not extend to a criminal background check of Defendant. *Clark* arose from a vehicle stop with a beginning analogous to here: run-of-the-mill traffic violations which turned into a more extensive investigation of a passenger in possession of a firearm. 902 F.3d at 406-08. There, the court noted that the police engaged in questioning well beyond the questions typically necessary for an officer to ask in relation to traffic violations. *Id*. at 411. As a result, the court found the officers exceeded the limits explained in *Rodriguez v. United States*, 135 S. Ct. 1609 (2015). *Id*.; *Rodriguez*, 135 S. Ct. at 1615-16 (providing that courts must look to the mission of the traffic stop to determine if it impermissibly lasted too long).

However, here, the officer's observations of the driver's erratic response to being pulled over and the passenger's furtive movements and subsequent ambiguous response, reasonably alerted the officer that more investigation should be undertaken. The passenger's conduct reasonably suggested to the officers that his possession of the gun was suspicious, leading to a criminal background check. Furthermore, in *Clark* the traffic violations, which were the initial "mission" of the stop, did not require extending the stop, since the violations did not include lack of valid operator's license nor improper registration plates. Here, the traffic violations prolonged the stop to the point that the vehicle could not be driven away by either of its occupants, effectively and permissibly extending the stop.

The defense also cites *United States v. Esteban*, 283 F.Supp.3d 1115 (D. Utah 2017), where the court found that doing a criminal background check while writing a citation impermissibly

extended the stop during which a dog sniff led to a search of the vehicle. 283 F.Supp.3d at 1130. That court relied on its finding that the officer had no reasonable suspicion for any criminal background check, which amounted to an "unrelated" inquiry. *Id* at 1131. Defendant's case illustrates the critical distinction where an officer reasonably suspects the occupant's behavior is related to criminal activity – illegal possession of the firearm.

The Fourth Circuit in *United States v. Hill*, 852 F.3d 377 (4th Cir. 2017), provides precedential guidance. In that case, the court focused on officer safety during a traffic stop as a permissible basis to go beyond the rigid limitation of investigating only the traffic violations which justify the stop. 852 F.3d at 383. *Hill* points out that when a firearm is present in a traffic stop, the officers do not unnecessarily prolong the stop when they act to secure the weapon and check the criminal background of the occupants. *Id*. at 383-84. The principles explained in *Hill* provide a broader basis to conduct a criminal history check of a passenger than needed for this case. Here, unlike *Hill*, there were also suspicious actions by both the passenger and driver which reasonably allowed the officer to ask for the National Crime Information Center (NCIC) report.

Defendant raises two objections to relying on Officer Duran's testimony to determine the facts. Officer Duran asserted that it is his practice to do background checks on all passengers when a firearm is present in a traffic stop, even apparently in the absence of reasonable suspicion. Though questionable under *Rodriguez*, this case does not present such facts, for the reasons already noted. Further, Officer Duran's credibility is not undermined by the inconsistencies in the sequence of events between his recollection and the CAD Report. By the time he sought background checks, he already had encountered the presence of the firearm along with the suspicious behavior of the passenger. Which occupant was first listed in his background request is inconsequential; he had an objectively reasonable suspicion to support checking on both. Lastly, his testimony concerning

his claim that he smelled marijuana, even if doubtful since he found none, does not discredit the rest of his testimony. The fact the focus of the stop did not become the smell of marijuana, a minor crime not implicating officer safety, is understandable as the presence of the hidden firearm was a more serious concern. While Defendant may have had a plausible explanation for hiding the gun under his seat, the simple fact is that the officers had reasonable suspicion to investigate.

Accordingly, for the foregoing reasons, the Court finds the initial stop of the vehicle was justified and the stop was not unreasonably extended because there was reasonable suspicion to investigate. Therefore, the Court **DENIES** Defendant's Motion to Suppress. Additionally, as Defendant has not filed any additional motions at this time, the Court **DENIES AS MOOT, BUT WITHOUT PREJUDICE,** his Motion Reserving Right to File Further Motions.

The Court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: March 15, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE